UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Peggy L. Michael,                                                            Case No. 3:20-cv-1861

          Plaintiff,

   v.                                                                                    MEMORANDUM OPINION
                                                 AND ORDER

Rebecca Conklin Kleiboemer,

          Defendant.


## I.    INTRODUCTION

Plaintiff Peggy L. Michael filed a motion for leave to file her first amended complaint on November 3, 2023. (Doc. No. 44). Defendant Rebecca Conklin Kleiboemer filed a brief in opposition on November 13, 2023. (Doc. No. 45).[1] Michael filed her reply brief on November 28, 2023. (Doc. No. 46). For the reasons discussed below, I grant Michael's motion in part and deny it in part.

## II.    BACKGROUND

On July 27, 2020, Michael sued Kleiboemer in the Lucas County, Ohio Court of Common Pleas for defamation and for violation of Michael's First Amendment rights based on Kleiboemer's alleged statements and conduct in a community Facebook group. (*See* Doc. No. 1-1). At the time this lawsuit commenced, Michael alleges she served as an elected Fiscal Officer for Swanton

---

[1] Kleiboemer's brief in opposition is 26 pages long, 11 pages over the limit provided by Local Rule 7.1(f). Yet she did not seek or receive permission from the court before filing a brief in excess of the page limit. Kleiboemer is gently reminded of the rule and cautioned against such conduct in the future.

Township and as an appointed temporary Deputy Fiscal Officer for Waterville Township. (Doc. 1-1 at 2-3). Michael also alleges that Kleiboemer was an elected Council Member for the Village of Whitehouse and served as Vice Chair of the Board of Cemetery Trustees for the Fallen Timbers Union Cemetery District. (*Id.*). Kleiboemer removed the case to federal court, and it has proceeded here for over three years. (*See* Doc. No. 1, Doc. No. 46). The initial deadline for amending the pleadings and adding parties has long since passed. (*See* Doc. No. 7) (setting deadline for amending pleadings as November 11, 2020).

Michael now seeks to amend her complaint to add allegations to her defamation claim about events that allegedly occurred just a few months ago. First, Michael's amended complaint would allege a set of facts about statements Kleiboemer allegedly made to the Office of the Ohio Auditor of State on June 30, 2023, including a formal fraud complaint, claiming that Michael overcharged the Village of Whitehouse on an invoice and that Michael is misusing public funds to pay for this lawsuit. (*See* Doc. No. 44-1 at 8). Second, Michael's amended complaint would allege the following:

> On or about September 2, 2023, Defendant Conklin knowingly, recklessly, and falsely stated to, at that time, the Village of Whitehouse Mayor Don Atkinson in a laughing and exuberant manner, - You'll never guess what I did? I reported Peggy and Jeff Michael and Swanton Township for criminal misconduct for illegally using Township funds to fund a federal lawsuit. I hope they are criminally charged, convicted, and go to prison and I will laugh my ass off. She further stated to Don Atkinson that - The auditor was sending a special team to Swanton to investigate the criminal conduct.

(*Id.*).

### III. STANDARD

Rule 15 provides a party may amend its pleadings once as a matter of course within 21 days of serving the pleading or, if a responsive pleading is required, 21 days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason –

2

such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989). "Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973).

Under Rule 16(b), a district court must issue a scheduling order limiting, among other things, the time to amend the pleadings. Fed. R. Civ. P. 16(b)(3). The scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). In determining whether good cause exists to modify a scheduling order, a court should consider "the diligence of the party seeking the extension" and "whether the opposing party will suffer prejudice by virtue of the amendment." *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003) (citing *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)). When a scheduling order deadline has passed, "a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Leary*, 349 F.3d at 909.

### IV. ANALYSIS

#### A. RULE 16

The parties dispute whether Michael has shown good cause for amending a scheduling order deadline in this case. (Doc. No. 46 at 3-4; Doc. No. 45 at 13).[2]

---

[2] Michael also argues that Rule 15(a)(2) alone governs this motion and that I need not determine whether good cause exists for amending a scheduling order under Rule 16(b). (*See* Doc. No. 44 at 1, Doc. No. 46 at 3-4). As Kleiboemer points out, the initial deadline for amending the complaint in this case expired long ago, so Michael must first meet the "good cause" threshold for amending a scheduling order before I turn to the substance of her proposed amended complaint. (*See* Doc. No. 45 at 13); *Leary*, 349 F.3d at 909.

First, Michael has shown diligence in pursuing her extension because she seeks to add allegations to her complaint about events that allegedly occurred on June 30, 2023 and September 2, 2023, over two-and-a-half years after the initial deadline for amending the pleadings expired. (*See* Doc. No. 7). Michael could not have complied with the earlier deadline for amending the pleadings with respect to these proposed amendments because the real-world events in question had not yet occurred. Further, once Michael discovered these events, she informed the court that she wished to amend her complaint only two months later. (*See* Doc. No. 43).

Second, as Michael argues, discovery has not yet closed, and no trial date or dispositive motion deadlines have been set, so any prejudice to Kleiboemer caused by allowing this amendment would not be substantial. (*See* Doc. 44 at 3); *cf Leary*, 349 F.3d at 909 (finding it was proper to deny leave to amend where the plaintiff sought to amend the complaint after the defendant filed his second motion for summary judgment). Michael also represents that any additional discovery can be "limited and relatively brief." (Doc. No. 44 at 3). Kleiboemer raises no specific arguments as to diligence or prejudice. (*See* Doc. No. 45 at 14).

Because Michael has shown good cause for seeking to amend the scheduling order, I will now consider "whether amendment is proper under Rule 15(a)." *Leary*, 349 F.3d at 909.

### B. PROPOSED AMENDMENTS

Kleiboemer argues Michael's proposed amendments are improper because they would be futile. (*See* Doc. No. 45 at 13).

"A proposed amendment is futile," and a court should not grant leave to amend, where the amendment "would not withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim." *Kriepke v. Wayne State Univ.*, 807 F.3d 768, 782 (6th Cir. 2015) (citing *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)). When ruling on a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts as true well-pleaded

4

factual allegations. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Legal conclusions and unwarranted factual inferences are not entitled to a presumption of truth. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case[,] and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Michael is suing Kleiboemer for defamation under Ohio law. (Doc. No. 1 at 8). When applying state law, a federal court must "anticipate how the relevant state's highest court would rule in the case" by looking to "controlling decisions of that court." *Vance v. Amazon.com*, 852 F.3d 601, 610 (6th Cir. 2017) (quoting *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005)). If there are no controlling highest court decisions, a court must "make the best prediction of what the state court would do if confronted with the question" by looking to state appellate court decisions. *Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 624 (6th Cir. 2008) (quoting *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004)) (internal quotation marks omitted).

### 1. Kleiboemer's alleged statements to the Office of the Ohio Auditor of State

Kleiboemer argues her alleged statements to the Office of the Ohio Auditor of State qualify for an absolute privilege because she submitted them "to a public body performing judicial or quasi-judicial functions." (Doc. No. 45 at 15). Michael argues that "[b]ecause communications to the Ohio Auditor of State's Office merely initiate an investigation and the Ohio Auditor of State's Office performs primarily investigatory, and not judicial functions, Defendant's communications were not made in the context of a judicial or even quasi-judicial proceeding" and therefore are not protected by an absolute privilege. (Doc. No. 46 at 7). In particular, Michael points to *Scott v.*

*Patterson*, a 2003 decision of the Ohio Court of Appeals for the Eighth District. (*See id.* at 6) (quoting No. 81872, 2003 WL 21469363, at *3 (Ohio Ct. App. June 26, 2003)).

Under Ohio common law, "[a] statement made in a judicial proceeding enjoys an absolute privilege against a defamation action as long as the allegedly defamatory statement is reasonably related to the proceeding in which it appears." *Hecht v. Levin*, 613 N.E.2d 585, 587 (Ohio 1993) (citing *Surace v. Wuliger*, 495 N.E.2d 939, 940 (Ohio 1986)). Here, the applicability of this absolute privilege turns on whether Kleiboemer's statements reporting supposed acts of fraud and corruption to an investigative agency within the Office of the Ohio Auditor of State were "made in a judicial proceeding." *Id.*

The Supreme Court of Ohio has articulated a capacious view of when a statement is "made in a judicial proceeding" for purposes of the absolute privilege. It has explained, "public policy necessitates free and unencumbered exchange of statements in judicial proceedings in order to assist courts in the truth-seeking process." *Surace*, 495 N.E.2d at 943. In the context of criminal prosecutions, an absolute privilege "encourages the reporting of criminal activity by removing any threat of reprisal in the form of civil liability." *M.J. DiCorpo, Inc. v. Sweeney*, 634 N.E.2d 203, 209 (Ohio 1994). Beyond bolstering courts' general truth-seeking function, the privilege "aid[s] in the proper investigation of criminal activity and the prosecution of those responsible for the crime." *Id.* For these reasons, in *M.J. DiCorpo, Inc.*, the Supreme Court of Ohio held that a voluntary affidavit submitted to a county prosecutor that initiated a prosecution was part of a judicial proceeding and thus was protected by the absolute privilege. 634 N.E.2d at 206, 209.

*Lasater v. Vidahl* extended this rationale to "those who report criminal activity to police officers." 979 N.E.2d 828, 830 (Ohio Ct. App. 2012); *accord Brown v. Chesser*, No. 97 CA 510, 1998 WL 28264 at *4 (Ohio Ct. App. Jan. 28, 1998) (citing *M.J. DiCorpo, Inc.*, 634 N.E.2d at 209). While acknowledging two contrary decisions in other Districts of the Ohio Court of Appeals – including

6

*Scott v. Patterson* – *Lasater* rejected both. *See* 979 N.E.2d at 830. The court explained: "Granting an absolute privilege to such statements promotes the public policies recognized by the Ohio Supreme Court in *Sweeney* of 'encourag[ing] the reporting of criminal activity,' 'aid[ing] . . . the proper investigation of criminal activity,' and 'prosecut[ing] . . . those responsible for the crime.'" *Id.* (quoting *M.J. DiCorpo, Inc.*, 634 N.E.2d at 209).

Further, the court in *Lasater* found no basis in public policy or precedent for "drawing a distinction between complaints made to police and complaints made to the prosecutor's office." *Id.* *Lasater* found that the two contrary decisions, including *Scott*, did not discuss the policy rationales articulated in *M.J. DiCorpo, Inc.*, and also did not identify any basis for drawing a distinction between complaints to police and complaints to a prosecutor's office.[3] *Id.* *Lasater* thus held that the defendant's statements to the police reporting a violation of a protective order were subject to the absolute privilege. *Id.* at 831.

---

[3] Michael also points to two federal cases to support her view that an absolute privilege does not apply to statements made to police about alleged crimes. (*See* Doc. No. 46 at 5). Neither is persuasive.

In *Dehlendorf v. City of Gahanna*, decided before *Lasater*, the district court followed the reasoning of the two cases *Lasater* rejected. 786 F. Supp. 2d 1358, 1364-65 (S.D. Ohio 2011). Significantly, the court in *Dehlendorf* found that three prior Ohio Court of Appeals cases applying the absolute privilege to statements made to police never squarely addressed the question of whether the privilege should apply. *See id.* at 1360-61. *Dehlendorf* then followed the cases that, in its opinion, did squarely address this question. *See id.* *Lasater*, which the *Dehlendorf* court did not have the opportunity to consider, addressed both cases *Dehlendorf* relied on and rejected them because neither case grappled with the reasoning in *M.J. DiCorpo, Inc.*. *See Lasater*, 979 N.E.2d 829-30.

The second case cited by Michael, *Reasbeck v. Wheeling Pittsburgh Steel Corp.*, is an unpublished table decision of the Sixth Circuit that briefly discussed the applicability of Ohio privilege law and noted only that "an individual who gives a statement or other information to a prosecuting attorney, reporting the actual or possible commission of a crime, is absolutely privileged against civil liability for statements made that bear some reasonable relation to the activity reported." *See* 230 F.3d 1359, 2000 WL 1434582 at *4 (6th Cir. 2000). Because neither case discussed the reasoning in *M.J. DiCorpo, Inc.*, as *Lasater* did, and because neither case had the opportunity to address *Lasater*, they are not a useful indication of how the Supreme Court of Ohio would decide this issue.

7

Under the reasoning in *M.J. DiCorpo, Inc.* and *Lasater*, I conclude the absolute privilege applies to Kleiboemer's statements. Michael's amended complaint would allege Kleiboemer reported Michael's purported overcharging practices and misuse of public funds to a unit within the Office of the Ohio Auditor of State that investigates and develops criminal cases in the arenas of public fraud and corruption. (*See* Doc. No. 44-1 at 7-8, 107-112; Doc. No. 46 at 7); *see also* Ohio Auditor of State, *Special Investigations Unit (SIU)* (available at https://ohioauditor.gov/publicintegrity/default.html) (last accessed Dec. 18, 2023). *M.J. DiCorpo, Inc.* and *Lasater* indicate that statements like these – reporting supposed criminal activity to a law enforcement agency – are "made in a judicial proceeding" and are therefore protected by the absolute privilege. *See M.J. DiCorpo, Inc.*, 634 N.E.2d at 209; *Lasater*, 979 N.E.2d at 830. It would be futile to permit Michael to amend her complaint to include allegations based on these privileged statements.

### 2. Kleiboemer's alleged statements to Donald Atkinson

Michael also seeks to amend her complaint to include additional allegations concerning Kleiboemer's alleged statements to Atkinson. "To establish defamation, the plaintiff must show (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement." *Anthony List v. Driehaus*, 779 F.3d 628, 632-33 (6th Cir. 2015) (quoting *Am. Chem. Soc. v. Leadscope, Inc.*, 978 N.E.2d 832, 852 (Ohio 2012)) (internal quotation marks omitted).

Here, Kleiboemer challenges (1) whether the alleged statements to Atkinson are false, and (2) whether they were made with the requisite degree of fault - actual malice. (*See* Doc. No. 45 at 21, 23). Michael does not contest that actual malice is the proper standard for evaluating these alleged statements. (Doc. No. 46 at 8).

8

> i. **Falsity**

Kleiboemer analyzes the falsity of her alleged statements to Atkinson in two steps. First, she carves up the text of the proposed amended complaint into three distinct propositions: "[1] I reported Peggy and Jeff Michael and Swanton Township for criminal misconduct for illegally using Township funds to fund a federal lawsuit. [2] I hope they are criminally charged, convicted, and go to prison and I will laugh my ass off. [3] The auditor was sending a special team to Swanton to investigate the criminal conduct." (Doc. No. 45 at 20-21). Then, she evaluates each proposition in isolation and argues Michael cannot show that any of them is a false statement of fact. (*Id.* at 21-23). Michael argues, in response, that she need not make a specific evidentiary showing at this stage and that the falsity of Kleiboemer's statements is "plausible." (Doc. No. 46 at 9).

In Ohio, "[f]or a statement to be defamatory, it must be a statement of fact and not of opinion." *Fuchs v. Scripps Howard Broad. Co.*, 868 N.E.2d 1024, 1035-36 (Ohio Ct. App. 2006) (citing *Vail v. Plain Dealer Publ'g Co.*, 649 N.E.2d 182, 185 (Ohio 1995)). Courts consider four factors in determining, based on the totality of the circumstances, whether a statement is fact or opinion: "the specific language used, whether the statement is verifiable, the general context of the statement, and finally, the broader context in which the statement appeared." *Vail*, 649 N.E.2d at 185 (citing *Scott v. News-Herald*, 496 N.E.2d 699, 706 (Ohio 1986); *see also Mallory v. Ohio Univ.*, No. 01AP-278, 2001 WL 1631329 at *5-7 (Ohio Ct. App. 2001) (applying this test to allegedly slanderous statements).

The goal of this "fluid" test is to distinguish between statements conveying "information of a factual nature" that are "objective" and "verifiable," and those characterized by "subjective hyperbole" with an "ambiguous meaning" that "lack[] a plausible method of verification." *Vail*, 649 N.E.2d at 185-86. "All four factors of Ohio's test for distinguishing a statement of fact from an opinion depend on the reasonable [listener]'s perception of the statement – not on the perception of the publisher." *McKimm v. Ohio Elections Comm.*, 729 N.E.2d 364, 371 (Ohio 2000). A statement of

9

fact can "impl[y] actual facts" as well as assert them outright. *Vail*, 649 N.E.2d at 185; *see also McKimm*, 729 N.E.2d at 372 (finding actionable "a political cartoon that falsely depict[ed] a public official engaging in illegal conduct").

First, the specific language Kleiboemer allegedly used expresses an unambiguous "accusation of criminal conduct," which is "a classic example of a statement with a well-defined meaning." *Mallory,* 2001 WL 1631329 at *5 (quoting *Ollman v. Evans*, 750 F.2d 970, 980 (D.C. Cir. 1984); *see also Vail,* 649 N.E.2d at 186 (noting that accusations of "punishable criminal or disciplinary conduct" are often cited as examples of "actionable language"). Kleiboemer allegedly stated to Atkinson that she "reported Peggy and Jeff Michael and Swanton Township *for criminal misconduct for illegally using Township funds to fund a federal lawsuit.*" (Doc. No. 44-1 at 9) (emphasis added). This communicates what Kleiboemer did and why: reporting Michael *because of* Michael's supposed criminal conduct in using Swanton Township funds to pay for the lawsuit.

Second, as many courts have noted, an accusation of specific criminal conduct like this one is a verifiable claim because it implies undisclosed facts whose veracity can be tested in court. *See, e.g.*, *Mallory*, 2001 WL 1631329 at *6 (finding that the statement "he definitely committed a sexual battery" was a specific and verifiable claim of fact); *Condit v. Clermont Cnty. Review*, 675 N.E.2d 475, 479 (Ohio Ct. App. 1996) ("accusations of perjury or criminal misconduct" are verifiable because they "are capable of proof or disproof in a court of law"). Further, that Kleiboemer allegedly told Atkinson that she herself reported Michael suggests she has some personal knowledge of verifiable facts underlying Michael's supposed wrongdoing. *See Mallory*, 2001 WL 1631329 at *6 (context implying a speaker had personal knowledge of verifiable information indicated a statement was fact, not opinion).

The general and broader context of the statements underscore that Kleiboemer's statements asserted facts, not opinion. *See Boulger v. Woods*, 917 F.3d 471, 481 (6th Cir. 2019) (analyzing these

10

factors together). The proposed amended complaint alleges Kleiboemer expressed her "hope" that Michael goes to prison and further alleges that Kleiboemer asserted "the auditor was sending a special team" to investigate. (Doc. No. 44-1 at 9). These alleged comments express Kleiboemer's desire for Michael to be punished and imply that the Office of the Ohio Auditor of State is taking Kleiboemer's report seriously. Read together, they suggest Kleiboemer's statement was meant to be taken at face value as an assertion that Michael misused public funds to pay for her lawsuit. *Cf. Leal v. Holtvogt*, 702 N.E.2d 1246, 1265 (Ohio Ct. App. 1998) (finding the defendant made statements of fact where she "sounded upset, irrational and hostile" on a phone call and said that "[the plaintiff] made various misrepresentations to her and that [the plaintiff] was untrustworthy").

Kleiboemer nevertheless argues that the "overall gist" of the statements is that "Peggy and Jeff Michaels have been reported for using Swanton Township funds to pay for her federal lawsuit," and that this is an accurate factual assertion. (Doc. No. 45 at 22). This passive-voice gloss ignores two key details. First, Kleiboemer allegedly told Atkinson that "I reported" Michael – not that some third party reported Michael. (Doc. No. 44-1 at 9). Second, as discussed above, Kleiboemer told Atkinson both what she did and why. The latter – the supposed reason Kleiboemer reported Michael – is the alleged assertion of fact to which Michael objects because it "assert[s]that Ms. Michael is or has engaged in fraudulent criminal activity." (Doc. No. 44 at 2-3).

Based on the totality of the circumstances, Kleiboemer's alleged statements in the proposed amended complaint imply an objective and verifiable factual assertion: that Michael illegally used Swanton Township funds to pay for her lawsuit. The amended complaint, relying on deposition testimony of the Lucas County Prosecutor, would further allege that this claim is false. (*See* Doc. No. 44-1 at 8). Therefore, the amended complaint would plausibly allege Kleiboemer made a false claim of fact to Atkinson about Michael.

11

### ii. Actual Malice

Michael also must plausibly allege Kleiboemer acted with actual malice when she made her statements to Atkinson.

A person publishes a statement with "actual malice" when they do so "with knowledge that it was false or with reckless disregard of whether it was false or not." *Scott v. News-Herald*, 496 N.E.2d 699, 704 (Ohio 1986) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279 (1964)). The actual malice inquiry focuses on the defendant's "attitude toward the truth or falsity of the publication" rather than "evidence of personal spite, ill-will or intention to injure" the plaintiff. *Scott*, 496 N.E.2d at 704 (internal citations and quotation marks omitted). While a plaintiff must ultimately prove actual malice by clear and convincing evidence, at the pleading stage a plaintiff need only "allege that [the defendant] acted with actual malice, and also . . . allege sufficient facts to make that allegation of malice plausible." *Green v. Mason*, 504 F. Supp. 3d 813, 832 (S.D. Ohio 2020).

Here, the proposed amended complaint would allege Kleiboemer "knowingly, recklessly and falsely" told Atkinson that Michael illegally used Swanton Township funds. (Doc. No. 44-1 at 8). Michael would further allege Kleiboemer made these statements after attending a deposition where the Lucas County Prosecutor stated that Swanton Township's use of funds to pay for Michael's lawsuit "conforms with the requirements of Ohio law." (*Id.*) Michael also attached an excerpt of this deposition where the deponent states that the use of Swanton Township taxpayer money to fund the lawsuit "conforms with the statute" as long as "the trustees deemed it advisable." (Doc. No. 46-1 at 4).

I may consider this document because it is "referred to in the Complaint and [is] central to the claims contained therein." *Bassett*, 528 F.3d at 430. Construing these pleadings in the light most favorable to Michael, this is sufficient to plead that Kleiboemer made the statements to Atkinson with "knowledge" they were false or with "reckless disregard" for whether they were false. *See*

12

*Green*, 504 F. Supp. 3d at 832 (alleging the defendant was present at an event giving rise to knowledge of falsity is enough to plead actual malice).

In response, Kleiboemer lists a litany of supposed "facts" that she knew and which "validate that [she] did not make a publication informing the former Mayor that Plaintiff had 'been reported' for 'illegal use of funds' which could be 'criminal' conduct with subjective inten[t] to publish falsely that that Peggy Michael had been so reported." (Doc. No. 45 at 25). Kleiboemer's arguments are not persuasive.

First, these unsupported assertions about Kleiboemer's state of mind roam well beyond the allegations in the proposed amended complaint and are not appropriate for consideration under the Rule 12(b)(6) standard. *See Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir. 2009) (reiterating the general rule that motions challenging the content of pleadings are limited to the material contained in the pleadings). Second, Kleiboemer again misapprehends the nature of Michael's defamation claim. Michael alleges it was false and defamatory for Kleiboemer to claim that Michael used public funds illegally, not merely that Kleiboemer reported Michael to the Ohio Auditor of State. (*See* Doc. 44-1 at 10).

As I discussed above, Michael's amended complaint would allege Kleiboemer communicated to Atkinson that Michael is illegally using public funds to pay for her lawsuit. The amended complaint would further plausibly allege Kleiboemer did so "knowingly, recklessly, and falsely" after being present for testimony indicating Michael's actions were not illegal. (*See* Doc. No. 44-1 at 8-9). It would not be futile for Michael to amend her complaint to include these allegations.

## V. CONCLUSION

For the reasons discussed above, I grant Michael's motion for leave to amend the complaint in part and deny it in part. (Doc. No. 44). Michael may file an amended complaint that includes proposed new paragraphs 24, 25, 30, and 35 as well as the proposed modification to the header for

13

Count 1 and the proposed additions to paragraphs 37 and 38. Michael's amended complaint may not include proposed new paragraphs 26, 27, 28, 29 or 36 because those proposed amendments would not support a plausible claim for relief. Michael shall file her amended complaint within seven days of the date of this Memorandum Opinion and Order.

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge